# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRON R. WASHINGTON, | Case No. 1:12-cv-00802-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Myron R. Washington ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income benefits ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C. § 1383(c). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## FACTUAL BACKGROUND

Plaintiff was born on November 20, 1992, was under the age of 18 at the time his application for benefits was filed, but turned 18 prior to the date of the November 23, 2010,

---

[1] The parties consented to the jurisdiction of the U.S. Magistrate Judge. (Docs. 8, 10.)

decision. (Administrative Record ("AR") 20.) Plaintiff filed an application for SSI on March 9, 2009, alleging disability beginning on April 1, 2006 (AR 166-72);[2] the only disabling condition identified was attention deficit disorder. (AR 201.)

**A.     Relevant Medical Evidence**

On June 21, 2006, Plaintiff underwent a psychiatric/medication evaluation administered by Mohammed Molla, M.D., a staff psychiatrist for Kern County Mental Health. (AR 347-50.) On examination, Dr. Molla noted that Plaintiff's thought process was linear and goal directed, but Plaintiff appeared depressed with a restricted affect. (AR 349.) He had fair impulse control, insight, and judgment. (AR 349.) He appeared to be of average intelligence and was awake, alert, and oriented to time, place, and person. (AR 349.) Dr. Molla diagnosed Plaintiff with Attention Deficit/Hyperactivity Disorder ("ADHD"), enuresis, and a learning disorder. (AR 350.)

On October 15, 2007, Plaintiff underwent a psychological evaluation by Michael Musacco, Ph.D. (AR 473-77.) Plaintiff's mother accompanied him to the evaluation, providing information to Dr. Musacco. (AR 473.) Plaintiff reported that he was attending tenth grade, but his mother stated that he was attending ninth grade. (AR 474.) Dr. Musacco noted that Plaintiff was placed in special education classes and his grades were low, regardless of his grade placement. Plaintiff acknowledged that he had learning problems and had engaged in some disruptive behaviors in the classroom. (AR 474.) Plaintiff received mental health treatment through Kern County Mental Health for the year prior to the examination, and he saw a psychiatrist on a bi-monthly basis. He was currently prescribed Seroquel to control his behavior. (AR 474.)

During the examination, Dr. Musacco administered a Bender Gestalt II test, a Wechsler Intelligence test, and he tested Plaintiff's adaptive functioning. (AR 475.) The Wechsler Intelligence test resulted in a verbal IQ score of 67, a performance IQ 90, and a full scale IQ of 72. (AR 475.) Dr. Musacco offered the following summary and recommendation:

> I offered the diagnosis of ADHD to account for the claimant's history of inattention and impulsivity, which have impacted his functioning at home and school. These symptoms were described the claimant and his mother and similar symptoms were referenced in the records.

---

[2] The ALJ determined that Plaintiff filed his SSI claim on February 26, 2009. (AR 17.)

2

> I offered a rule out diagnosis of a Learning Disorder to account for substantial deficits noted in the claimant's verbal skills and academic functioning. I suspect that the claimant's ADHD contributes to his academic difficulties; however, it appears that he suffers from an independent condition warranting this diagnosis. I did not conduct academic testing which would be necessary to confirm this finding.
>
> On Axis II I offered the diagnosis of Borderline Intellectual Functioning. The claimant's I.Q. test results revealed a pattern of relative strengths and weaknesses in the claimant's intelligence. However, his overall functioning appears to fall in the Borderline range.

(AR 476.) In discussing Plaintiff's scores on the Wechsler Intelligence Scale for children, Dr. Musacco noted that Plaintiff's "pattern of scores suggests deficits associated with a possible learning disability and an impairment in his attention associated with ADHD. (AR 475.)

On November 16, 2007, J. Trachtenberg, a child psychiatrist, reviewed Plaintiff's records and completed a Childhood Disability Evaluation Form. (AR 478-83.) In the area of acquiring and using information, Dr. Trachtenberg deemed Plaintiff's limitations "less than marked." (AR 480.) Dr. Trachtenberg noted Plaintiff's IQ scores from his psychological compensation examination, and indicated that Plaintiff's speech was organized and goal directed. (AR 480.) In the area of "attending and completing tasks," Dr. Trachtenberg checked a box indicating that Plaintiff's limitations were "less than marked." (AR 480.) Dr. Trachtenberg noted that Plaintiff had a history of problems with inattention and impulsivity, but that he had reported that his medications were helpful in addressing these problems. (AR 480.) Plaintiff's February 2007 Individualized Education Program ("IEP") reflected that, while he had difficulty focusing in class and did not always complete his work, he did "an outstanding job" on all the power point projects. (AR 480.) Plaintiff was also able to do animation and many high level skills. (AR 480.)

In the area of interacting and relating with others, Dr. Trachtenberg indicated that Plaintiff's limitations were "less than marked." (AR 480.) He noted that Plaintiff had several friends and enjoyed interacting with them even though he was moody and often argued with his siblings. (AR 480.) Dr. Trachtenberg also noted that Plaintiff's limitation in the ability to care for himself was "less than marked," noting that at his compensation examination, Plaintiff had intact hygiene and grooming. (AR 481.)

Psychiatric Progress Notes from Kern County Mental Health between 2008 and 2009 show a check-marked box that Plaintiff had "average intelligence" (AR 497, 504, 509, 513, 523, 528), and he was reported as "stable" and "doing good when on meds" (AR 498), but that he had poor adherence to treatment and poor grades at school. (AR 528-29.)

On May 4, 2009, state agency physician K.J. Loomis, M.D., reviewed Plaintiff's medical records and opined that, while Plaintiff's mental impairment was severe, it did not meet or equal a Listing. (AR 553.)

On October 26, 2009, state-agency physician K. Law, M.D., reviewed Plaintiff's medical records and affirmed Dr. Loomis' May 4, 2009, opinion. (AR 592.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 69-82, 93-96, 108-10.) On October 14, 2010, the ALJ held a hearing. Plaintiff testified, through the assistance of counsel, and Plaintiff's mother provided testimony. (AR 32-58.)

On November 23, 2010, the ALJ issued a decision finding Plaintiff not disabled. (AR 17-26.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the date the application was filed; (2) has the following severe impairments or combination of impairments: ADHD, combined type; learning disorder; borderline intellectual functioning; cannabis abuse in reported remission; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A or B; (4) does not have an impairment or combination of impairments that functionally equaled a listing; and found Plaintiff not disabled since February 26, 2009, through the date of decision. (AR 17-26.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 10-13.) On March 17, 2012, the Appeals Council denied review. (AR 3-5.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

///

///

4

**C.   Plaintiff's Complaint**

On May 16, 2012, Plaintiff filed a complaint in this Court, asserting that the ALJ erred in failing to consider whether Plaintiff met the requirements for mental retardation pursuant to the Listings of Impairments ("Listings") set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.

### SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    Childhood Disability Standards**

For a child under the age of eighteen to qualify for disability benefits, the child must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a child is eligible for benefits on the basis of a disability, the Social Security Administration has enacted a three-step sequential analysis.  20 C.F.R. § 416.924(a).  First, the ALJ considers whether the child is engaged in "substantial

gainful activity." *Id.* § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* § 416.924(c). Finally, if a severe impairment is found, the ALJ must consider whether the impairment meets, "medically equals," or "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* § 416.924(c)-(d). An impairment is considered to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). A "marked limitation" is one that "seriously interferes with [a person's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An "extreme limitation" is one that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).

To determine whether an impairment exists, the child's ability to function in the following six domains is considered: (1) to acquire and use information; (2) to attend and complete tasks; (3) to interact and relate with others; (4) to move about and manipulate objects; (5) to care for oneself; and (6) the child's general health and physical well-being. 20 C.F.R. § 416.926a(a)-(b). To demonstrate functional equivalence, the child must exhibit a marked limitation in two of the domains, or an extreme limitation in one domain. 20 C.F.R. § 416.926a(e)(2)(i).

**B.   The ALJ Erred in Failing to Consider Listing 112.05D**

Plaintiff argues that he meets Listing 112.05D and/or Listing 12.05C,[3] and the ALJ erred at the Third Step of the sequential evaluation in finding that he does not. (Doc. 17, 11:17-18.) Specifically, Plaintiff asserts that he has a qualifying IQ score; he has additional severe impairments of ADHD, a learning disorder, and cannabis abuse; and he has sub-average mental functioning with deficits in adaptive functioning manifested during the developmental period (before age 22).

The Commissioner asserts that Listings 112.05D and 12.05C for mental retardation were not considered by the ALJ because Plaintiff did not allege mental retardation in his application or

---

[3] Plaintiff notes that he turned 18 three days prior to the ALJ's decision, and his claim for disability should have been analyzed under 20 C.F.R. § 416.920, Listing 12.05C, an analogous Listing for adults, in addition to the childhood Listing 112.05D.

7

at the hearing, despite being represented by counsel, and no physician determined that Plaintiff met or equaled a Listing. (Doc. 19, 5:22-26.) Further, even to the extent the ALJ had considered these Listings, Plaintiff fails to meet the specific diagnostic requirements.

### 1.     The ALJ's Obligation to Consider Whether a Claimant Meets a Listing

The Listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Indeed, physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).

At the Third Step, the ALJ must evaluate the claimant's impairments to determine whether he or she meets or medically equals any of the impairments contained in the Listings; if any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. *See* 20 C.F.R. § 416.920(d). The plaintiff bears the burden of proving that an impairment or combination of impairments meets or equals the criteria of a Listing. *Tackett*, 180 F.3d at 1100; *Zebley*, 493 U.S. at 530-31 (burden is on the claimant to show that his or her impairment meets all of the specified medical criteria for a Listing or to present medical findings equal in severity to all the criteria for the one most similar listed impairment).

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairment or impairments meet or equal one of the specified impairments set forth in the Listings. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. § 416.920(a)(4)(iii). Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a Listing]." *Lewis*, 236 F.3d at 512; *see also, e.g., Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (noting that the ALJ's unexplained finding at step three was reversible error). However, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a Listing. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Nevertheless, remand is appropriate where an ALJ fails adequately to consider a Listing that plausibly applies. *Lewis*, 236 F.3d at 514.

### 2. Listing 112.05D

Listing 112.05D contains the requirements for the impairment of "mental retardation." The Regulations acknowledge that Listing 112.05 is different from other Listings:

> The structure of the Listing[] for Mental Retardation (112.05) . . . is different from that of the other mental disorders. Listing 112.05 (Mental Retardation) contains six [6] set of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria, we will find the child's impairments meet the Listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(A). The introductory paragraph to Listing 112.05 provides that mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. § 404, Subpt. P, Appendix 1, Listing of Impairments ("Listings") 112.05. Listing 112.05D provides, in relevant part:

> *Mental Retardation*: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
> . . .
>
> D. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D).

To meet the requirements of Listing 112.05D, a claimant must establish the following three elements: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing additional and significant work-related limitations of function. 20 C.F.R. Part 404, Appendix 1 (112.00 Mental Disorders).

///
///
///
///

9

### 3. The ALJ's Boilerplate Finding that Plaintiff did not Meet a Listing was Insufficient

Contrary to the Commissioner's assertion, there is evidence that plausibly supports a finding that Plaintiff meets the requirements of Listing 112.05D, and the ALJ was required to weigh that evidence and determine whether it met the requirements of Listing 112.05D. *Lewis*, 236 F.3d at 512 ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a Listed impairment."). The Commissioner correctly notes that Plaintiff did not claim he suffered from mental retardation on his applications for disability, and his counsel did not raise the issue of mental retardation or qualification for Listing 112.05D at the hearing before the ALJ. However, Plaintiff's failure to specifically claim "mental retardation" as a disabling condition on his application does not waive consideration of that mental impairment, particularly where the ALJ found that Plaintiff had a severe impairment of borderline intellectual functioning based on medical evidence obtained after the application was filed. Further, while Plaintiff's counsel's failure to articulate an argument that Plaintiff meets the Listing for mental retardation at the hearing is inefficient, as set forth below, the medical evidence presented to the ALJ plausibly evidences that Plaintiff meets Listing 112.05D. The ALJ recognized Plaintiff's borderline intellectual functioning impairment as severe and specifically noted Plaintiff's low IQ scores in making that severity finding. Under these circumstances, the Court finds that the ALJ was required to consider the applicability of Listing 112.05D, and the argument was not waived at the administrative level.

#### a. Plaintiff Has a Facially Qualifying IQ Score

Listing 112.05(D) requires that a claimant show a "valid verbal, performance, or full scale IQ of 60 through 70." In considering the IQ requirement in Listing 12.05 for adult mental retardation, courts in the Ninth Circuit have held that where multiple or conflicting IQ scores are available, the operative score for purposes of determining whether a claimant's impairments meet or equal Listing 12.05(C) is the lowest "valid verbal, performance, or full scale IQ" score the claimant has received. *See Fanning*, 827 F.2d at 633 (holding that where a claimant underwent IQ tests in both 1982 and 1983, higher scores obtained in 1983 did not render lower scores obtain in

10

1982 invalid for purposes of listing 12.05(C)); *Ray v. Chater*, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (finding that "it can be inferred that when multiple IQ scores are available the Regulations prefer the lowest score"); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

Dr. Musacco administered IQ tests, which indicated Plaintiff had a verbal IQ of 67, a performance IQ of 90, and a full scale IQ of 72. (AR 475.) Thus, Plaintiff has a qualifying IQ score of 67. The ALJ acknowledged Plaintiff's IQ scores in determining that Plaintiff had a severe condition of borderline intellectual functioning, but did not address the IQ scores as they pertain to Listing 112.05D.

**b.    There is Evidence That Plaintiff Has Deficits in Adaptive Functioning**

Pursuant to Listing 112.05, mental retardation is "characterized by significant subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.05. Beyond a qualifying IQ score, which establishes "significant subaverage general intellectual functioning," a claimant must demonstrate deficiencies in adaptive functioning. When determining whether a claimant demonstrates deficits in adaptive functioning, courts consider a variety of factors, including a claimant's poor academic performance, participation in special education, and work history. *See, e.g., Rocha ex rel. A.R. v. Astrue*, No. CV-11-3006-CI, 2012 WL 4903586, at *4-5 (E.D. Wash. Oct. 16, 2012); *Lewis v. Astrue,* No. CV-10-63-SU, 2011 WL 1085254 (D. Or. Feb. 15, 2011), *recommendation adopted by Lewis v. Astrue*, NO. CV-10-63-SU, 2011 WL 1042676 (D. Or. Mar. 22, 2011); *Ware ex rel. v. Shalala*, 902 F. Supp. 1262, 1271 (E.D. Wash. 1995); *Christner v. Astrue*, 498 F.3d 790, 793 (9th Cir. 2007)). Pursuant to the *Diagnostic and Statistical Manual of Mental Disorders IV*, Text Revisions ("DSM-IV-TR"), American Psychiatric Association (4th ed. 2000), deficits in adaptive functioning must be demonstrated in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV-TR at 49.

The ALJ did not consider whether Plaintiff demonstrated deficits in adaptive functioning relevant to Listing 112.05D. Instead, the ALJ considered Plaintiff's degree of limitation in the six domains of function, which includes (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. The ALJ found that Plaintiff had marked limitation in attending and completing tasks; less than marked limitation in acquiring and using information, and interacting and relating with others; and no limitation in the ability to move about and manipulate objects, care for himself, or in his health and physical well-being.

Plaintiff asserts that the DSM-IV only requires deficits in adaptive functioning, not a particular level of deficit. He argues that the evidence shows he has behavioral deficits, and his teachers noted academic deficits with behavior difficulties. Plaintiff contends that this establishes that he has sufficient deficits in adaptive functioning to meet the requirements of the Listing.

The Commissioner argues that Plaintiff's lack of medication compliance affects his functional abilities adversely, and disqualifies him from meeting the Listing. Because the ALJ did not address the Listing expressly or evaluate this evidence in light of that Listing, the Court cannot in the first instance determine Plaintiff suffers deficits in adaptive functioning, despite that he was not medication-compliant for his ADHD. Moreover, the Commissioner notes that Dr. Musacco found that Plaintiff's scores on the Vineland Adaptive Behavior Scales revealed "substantial impairment in the claimant's adaptive functioning, but he nonetheless suspected that "these findings may underestimate [Plaintiff's] abilities." (AR 476.) The ALJ did not address these factual issues and this Court is not the trier of fact, positioned to weigh the evidence. Here, there is evidence that Plaintiff has some functioning deficits, but there is also evidence that Plaintiff was not medication compliant for his ADHD, which may affect his level of adaptive functioning. The ALJ must weigh the evidence, and consider whether it evidences deficits in adaptive functioning.

### c. **Plaintiff Has Additional and Significant Limitations of Function**

The third prong of Listing 112.05D requires a claimant to establish a physical or other mental impairment imposing additional and significant work-related limitations of function. "[A]n

impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning*, 827 F.2d at 633. A finding of a severe impairment at the Second Step is a *per se* finding of an "impairment imposing additional and significant work-related limitations of function" as defined in Listing 112.05. *See Fanning*, 827 F.2d at 633; *Rocha v. Astrue*, 2012 WL 4903586, at *5 (noting that caselaw establishes that a person who has a severe physical or other mental impairment at the second step meets the second prong of Listing 12.05(C), and therefore meets the analogous prong of Listing 112.05(D)); *Campbell v. Comm'r. of Soc. Sec.*, No. 09-cv-00465-GSA, 2011 WL 444783, at *18 (E.D. Cal. Feb. 8, 2011); *Huber v. Astrue*, No. CV 10-8043-PCT-DGT, 2010 WL 4684021, at *2 (D. Ariz. Nov. 12, 2010); *Rowens v. Astrue*, No. 09-cv-00163 GGH, 2010 WL 3036478, at *3 (E.D. Cal. Aug. 2, 2010) ("[I]n this circuit, a person who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of the § 12.05(C) listing."); *see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984); *Nieves v. Sec'y of Health & Human Servs.*, 775 F.2d 12, 14 n.7 (1st Cir. 1985).

This is particularly evident when considering the Social Security Administration's definition of a severe impairment at the Second Step: "You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c). As the ALJ determined that Plaintiff has additional severe impairments apart from his borderline intellectual functioning (AR 20), Plaintiff meets this prong of Listing 112.05D. While the Commissioner asserts that Plaintiff does not have a physical or mental impairment other than mental retardation imposing any additional and significant limitations of function, the ALJ's finding of additional severe impairments including ADHD and a learning disability belies this argument. (*See* AR 20.)

///

///

### d. The ALJ's Failure to Expressly Consider Listing 112.05D Was Not Harmless

Despite the medical evidence discussed above, at the Third Step, the ALJ concluded summarily that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (AR 20.)  A boilerplate finding such as this is insufficient, *Marcia*, 900 F.2d at 176, unless the ALJ's discussion of the relevant medical evidence adequately supports the conclusion, *Lewis*, 236 F.3d at 513.  For example, in *Lewis*, the claimant, Lewis, argued that the ALJ erred by failing to elaborate on his determination that Lewis' seizure disorder and mental retardation did not meet or equal a Listing.  *Id.* at 512.  In rejecting this argument, the Ninth Circuit reasoned that, although the ALJ failed to discuss the requirements of the relevant Listings -- an oversight which would have required reversal -- the ALJ made a finding that Lewis' seizures were largely a result of noncompliance with his prescribed therapy.  *Id.* at 513. The court noted that the two relevant epilepsy Listings required that the seizure impairment persist "despite the fact that the individual is following prescribed anticonvulsive treatment." *Id.* The court determined that the ALJ's discussion and finding of Lewis' noncompliance with his prescribed therapy was sufficient to support the finding that Lewis failed to meet either Listing because a claimant must meet *all* the requirements.  *Id.*  Similarly, with respect to Lewis' mental retardation, the ALJ noted that Lewis' IQ scores were well above the maximum IQ of 70 allowed by the Listing.  *Id.* at 514.  As such, the ALJ had adequately discussed the evidence that supported his Step Three finding, despite that the evidence was not discussed directly in relation to the Step Three determination.  *Id.*

The facts of this case are distinguishable.  As discussed above, there is no finding by the ALJ that definitively disqualifies Plaintiff from meeting the requirements of the Listing.  His IQ score, on its face, qualifies to meet the Listing.  The ALJ found that Plaintiff has some degree of limitation in the six functional domains that may support a finding that he suffers deficits in adaptive functioning, and Plaintiff has other severe conditions evidencing additional and significant limitations of function.  Thus, the Court cannot conclude that the ALJ's findings obviated the need for an express discussion of Listing 112.05D at Step Three.

Because there is evidence that, at least on its face, suggests that Plaintiff may meet Listing 112.05D, this matter must be remanded for the ALJ to make the appropriate findings. On remand, the ALJ should also determine whether the analogous adult Listing 12.05C for mental retardation is applicable, in light of the fact that Plaintiff turned 18 three days before the ALJ's original decision was issued.[4]

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Myron Washington and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 26, 2013**                    **/s/ Sheila K. Oberto**
                                                UNITED STATES MAGISTRATE JUDGE

---

[4] Listing 12.05C contains the same requirements as Listing 112.05D. Thus, because the evidence shows that Plaintiff plausibly meets Listing 112.05D and that Listing must be considered by the ALJ, the ALJ shall also consider the applicability of Listing 12.05D.